UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CHARLES W. TOOKER,

                Plaintiff,

        v.

T MAK, et al.,

                Defendants.

Case No. 20-cv-07373-HSG

**ORDER DENYING PLAINTIFF'S REQUEST FOR APPOINTMENT OF COUNSEL; DENYING AS MOOT DEFENDANTS' MOTION FOR SANCTIONS; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 32, 44, 46

Plaintiff, an inmate at Correctional Training Facility ("CTF"), has filed a *pro se* complaint under 42 U.S.C. § 1983.  Now pending before the Court is Defendants' motion for summary judgment.  Dkt. No. 32.  Plaintiff has not filed an opposition to Defendants' motion for summary judgment, despite receiving a five-month extension of time.  Dkt. No. 39.  Defendants have filed a reply, Dkt. No. 48.  Also pending before the Court are Plaintiff's motion to appoint counsel, Dkt. Nos. 44, 47; and Defendants' motion for sanctions, Dkt. No. 46.  For the reasons set forth below, Plaintiff's motion to appoint counsel is DENIED, Dkt. No. 44; Defendants' motion for sanctions is DENIED as moot, Dkt. No. 46; and Defendants' motion for summary judgment is GRANTED, Dkt. No. 32.

## DISCUSSION

### I.      Factual Background

#### A.      Relevant Events

The following facts are undisputed unless otherwise indicated.

On July 21, 2019, as Plaintiff crossed the CTF B Yard recreation yard on his way to the library, he was randomly and viciously attacked by a crazed inmate, inmate Odell.  Dkt. No. 1 at 9.

Plaintiff fought back in self-defense.  Dkt. No. 1 at 9.  Correctional officer Villasenor saw Plaintiff and inmate Odell fighting.  The inmates were punching each other in the head and upper torso. Dkt. No. 32-14 ("Villasenor Decl."), ¶ 4.  Officer Villasenor ordered both inmates to stop fighting and get down.  Villasenor Decl., ¶ 5.  The inmates complied and assumed prone positions on the ground.  Villasenor Decl., ¶ 5.  During this time, none of the video cameras on the yard were functioning.  Dkt. No. 32-12 ("Mak Decl."), ¶ 13; Dkt. No. 32-18 ("Galvan Decl."), ¶ 4.

Medical staff immediately evaluated both inmates and completed CDCR Form 7219 Medical Report of Injury or Unusual Occurrence for each inmate.  Villasenor Decl., ¶ 6.  Inmate Odell was transported by ambulance to an outside hospital, Natividad Medical Center, directly from B Yard, where the following injuries were documented: "left shoulder dislocation after a physical altercation," abrasions to hands and knees," and "minimal swelling to the forehead."  Dkt. No. 32-24 ("Desta Decl."), ¶ 2 and Ex. A at 3-5, 18.  Inmate Odell was discharged from NMC Hospital with instructions to start physical therapy and follow up with his primary care provider or the orthopedic clinic.

The responding correctional officers escorted Plaintiff to a holding cell where they questioned him and took photos of his injuries.  Plaintiff implored the responding correctional officers to corroborate his claim of self-defense by investigating the incident in the following manner: interviewing any of the more than 100 inmate-witnesses at the scene and reviewing surveillance videos.  The responding correctional officers assured him that, per standard procedure, they would investigate.  Plaintiff was informed that he would be transferred to the administrative segregation unit ("ASU") pending investigation of the fight.  When Plaintiff returned to his cell, he found his belongings packed up for the transfer.  Plaintiff unpacked his belongings and remained housed in his cell.  Dkt. No. 1 at 9.

In the days following the fight, numerous inmates approached Plaintiff to discuss the incident and agreed that Plaintiff had acted in self-defense.  Dkt. No. 1 at 9.  No inmate reported being interviewed by correctional officers, which led Plaintiff to assume that correctional officers had quickly investigated and found him to be innocent of fighting.  Dkt. No. 1 at 9.

On July 23, 2019, Plaintiff was issued a rules violation report ("RVR"), charging him with

fighting (Cal. Code Regs. § 3005(d)(1)).  Section 3005(d)(1) prohibits the use of force or violence by inmates: "Inmates shall not willfully commit or assist another person in the commission of an assault or battery to any person or persons, nor attempt or threaten the use of force or violence upon another person."  15 Cal. Code Regs. § 3005(d)(1)).  Section 3005(d)(1) does not make an exception for force used in self-defense.  This RVR included the incident report drafted by Officer Villasenor reporting her observations.  Villasenor Decl., ¶ 8 and Ex. A; Galvan Decl., ¶ 5 and Ex. A.

On July 31, 2019, Plaintiff was given a copy of the RVR and the related CDCR Form 8219 Medical Reports.  Dkt. No. 1 at 10; Mak Decl., ¶ 9; Galvan Decl., ¶ 6 and Ex. B at 6.

On August 1, 2019, Plaintiff was given black-and-white photocopies of photographs relating to the fight.  Dkt. No. 1 at 11.

On August 7, 2019, when Plaintiff was on the yard for recreation time, he was ordered to report back to his housing unit.  Dkt. No. 1 at 11.  Plaintiff assumed that he would be attending a preliminary interview with an officer or appointed investigative assistant, which would allow him to address his many concerns with the disciplinary hearing procedures and assist him in preparing for his disciplinary hearing.  Dkt. No. 1 at 11.  Instead, Plaintiff found himself attending the disciplinary hearing, which was chaired by defendant Mak.  Dkt. No. 1 at 11.  Defendant Mak asked Plaintiff if he wanted to give a statement regarding the RVR.  Dkt. No. 1 at 11.  Plaintiff did his best to present the relevant facts.  Dkt. No. 1 at 11.  Plaintiff told defendant Mak: "He attacked me, I came out to go to the library, the library line was long and couldn't get in.  I was defending myself."  Dkt. No. 1 at 38.  Plaintiff pleaded not guilty to the RVR and testified that he had been acting in self-defense.  Mak Decl., ¶ 10; Galvan Decl., ¶ 10 and Ex. B at 10.  Plaintiff stated that he wanted inmate-witnesses to testify on his behalf, but when defendant Mak asked for the names of the inmate-witnesses, Plaintiff refused to provide any names.  Mak Decl., ¶ 10; Galvan Decl., ¶ 10 and Ex. B at 10.  Plaintiff expressed his concern with the procedures governing the hearing and with his inability to adequately defend himself.  Dkt. No. 1 at 11.  Defendant Mak responded by "chiding + mocking" Plaintiff as defendant Mak flipped through the photos of the post-incident injuries.  Dkt. No. 1 at 11.  Plaintiff's questions regarding potential staff assistance, exculpatory

3

surveillance video evidence, witnesses and the like were ignored by defendant Mak.  Dkt. No. 1 at 11.  Defendant Mak found Plaintiff guilty of the RVR, stating that the conclusion was supported by the RVR, Officer Villasenor's report, the CDCR 7219s for both inmates, the photographs, and Plaintiff's testimony.  Dkt. No. 1 at 11; Mak Decl., ¶ 12; Galvan Decl., ¶¶ 6-7 and Ex. B at 10 and Ex. C.  Defendant Mak issued the following punishment: loss of 90 days' credit and placement in Privilege Group C for 30 days.  Mak Deck. ¶ 14; Galvan Decl. ¶ 6, Ex. B at 10-11.  Being placed on C-status includes the loss of Family Visits,[1] limited telephone calls, and restrictions on day-room access, canteen and package purchase, and yard time.  15 Cal. Code Regs. §§ 3044(f)(2); 3177.

On October 20, 2019, the 90-day loss of credit was restored to Plaintiff because he had remained discipline-free since being found guilty of the RVR.  Galvan Decl., ¶ 8, Exs. D and E.

**B.    CDCR Grievance Process**

In 2019, the CDCR provided inmates with the administrative grievance process set forth in the version of 15 Cal. Code §§ 3084-3086 in effect at that time which allowed inmates to challenge ". . .departmental policies, decisions, actions, conditions, or omissions that have a material adverse effect upon the welfare of inmates . . ."  15 Cal. Code Regs. § 3084.1(a) (2019).  The grievance process required a prisoner to use a CDCR Form 602 "to describe the specific issue under appeal and the relief requested" by stating all facts known and available regarding the issue, and by listing all staff member(s) involved and describing their involvement in the issue.  15 Cal. Code Regs. § 3084.2(a) (2019).  A grievance was reviewed at three different levels: (1) a first formal level filed with one of the institution's appeal coordinators, (2) a second formal level filed with the institution head or designee, and (3) a third formal level filed with the CDCR director or designee.  15 Cal. Code Regs. § 3084.7 (2019).  Pursuing a grievance through the third and final level satisfied the Prison Litigation Reform Act's exhaustion requirement.  15 Cal. Code Regs. § 3084.1(b) (2019).  Prison regulations required inmates to identify the staff members involved

---

[1] "Family Visits" are extended overnight visits available only to eligible inmates and their immediate family members, subject to various security restrictions and other limitations.  15 Cal. Code Regs. § 3177.

United States District Court
Northern District of California

1   with the following level of specificity:

2   > The inmate or parolee shall list all staff member(s) involved and shall describe their
3   > involvement in the issue. To assist in the identification of staff members, the inmate or
    > parolee shall include the staff member's last name, first initial, title or position, if known,
4   > and the dates of the staff member's involvement in the issue under appeal. If the inmate or
    > parolee does not have the requested identifying information about the staff member(s), he
5   > or she shall provide any other available information that would assist the appeals
    > coordinator in making a reasonable attempt to identify the staff member(s) in question. [¶]
6   > The inmate or parolee shall state all facts known and available to him/her regarding the
    > issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if
7   > needed, the Inmate/Parolee Appeal Form Attachment.

8   15 Cal. Code Regs. § 3084.2(a)(3)–(4) (2019).

9       In 2020, the regulations that set out the features of the administrative remedies process for

10  California prisoners underwent a substantial restructuring.  On March 25, 2020, and effective June

11  1, 2020, 15 Cal. Code Regs. §§ 3084–3084.9 were repealed and replaced with renumbered and

12  amended provisions at sections 3480 through 3487.  The primary change was a reduction of the

13  levels of review for non-healthcare appeals from three levels to two levels, with the first level now

14  referred to as a grievance and the second level referred to an appeal.  *See, e.g.* 15 Cal. Code Regs.

15  §§ 3481 *et seq.*  The restructured administrative remedies process continued to require the inmate

16  to identify the names and titles of all involved staff members, or to describe those staff members.

17  15 Cal. Code Regs. § 3482(c)(2).

18      **C.      Plaintiff's Grievances**

19      Plaintiff identifies two grievances as exhausting the claims raised in this action:  Grievance

20  No. CTF-19-02959 and Log Number 021289.  Dkt. No. 1 at 1-2, 14.

21          **1.      Grievance No. CTF-19-02959**

22      Plaintiff submitted Grievance No. CTF-19-02959 on August 31, 2019, alleging that he had

23  wrongly been issued a RVR for fighting when he had been forced to defend himself from a brutal,

24  unprovoked attack; that the RVR was inaccurate and incomplete; and that he had been denied

25  critical video evidence which would corroborate his testimony and prove his innocence.  He

26  concluded that he been denied a fair hearing and "due process in many respects."  Dkt. No. 1 at

27  33, 35.  He requested the dismissal of the RVR, suggested that the RVR be replaced by 128 info

28  chrono/counseling, the restoration of lost credits, and to be free from reprisal for submitting this

United States District Court
Northern District of California

grievance.  Dkt. No. 1 at 33, 35.

Grievance No. CTF-19-02959 bypassed the first level of review and was denied at the second level of review ("SLR") by defendant Deverick.  The denial stated in relevant part:

> The inmate appeals process is a grievance process to address issues regarding policy and/or procedure violations and is not intended as a process to rehear an RVR.  The appellant had the opportunity to present a credible defense at the hearing and failed to do so.  It was determined at the SLR, the [Senior Hearing Officer] appropriately documented all evidence used in the hearing in compliance with CCR, Title 15, § 3320(l) to meet the preponderance standard.
>
> The appellant did not provide any new or additional information that would justify a change to the disposition of the [Senior Hearing Officer] or information that would substantiate his request for the RVR to be dismissed.  He was afforded all due process and procedural safeguards, and he was found guilty based on a preponderance of evidence presented at the hearing.

Dkt. No. 1 at 39.

On January 16, 2020, Grievance No. CTF-19-02959 was denied at the third and final level of review by Defendant Lee as follows:

> The Third Level of Review (TLR) reviewed the issues raised and finds no basis to modify the SLR.  The TLR notes the appellant was present for the hearing, was afforded the opportunity to call witnesses and made a similar defense as that which is written in the appeal.  The TLR acknowledges that the appeals process is not intended to be a forum to introduce new evidence that were discoverable at the time of the disciplinary hearing.  Rather, the process is to ensure the appellant has been afforded all due process and administrative protections.  In this case, the TLR finds all due process was afforded to the appellant as indicated in the SLR.  California Code of Regulations, Title 15, Section (CCR) 3000 states in part, "Good Cause means a finding based upon a preponderance of the evidence that there is a factual basis and good reason for the decision made."  Therefore, no relief is deemed appropriate at the TLR.

Dkt. No. 1 at 41.

### 2.    Log No. 021289

On July 20, 2020, Plaintiff submitted Log No. 021289, alleging that CTF was "withholding exculpatory video evidence of assault."  The grievance specifically alleged as follows:

> I specifically grieve CTF's refusal to acknowledge, let alone accommodate, repeated requests (written + verbal) to share w/ me surveillance video of attack: video captured by multiple cameras clearly trained on attack site; video referenced by responding staff during post-attack interview; video I emphatically reference + request in each discussion w/ CTF/CDCR staff since, yet detail systematically, instantly, curiously dismissed, +/- or notably unethically excluded from <u>all</u> official reports (e.g., RVR; "115"; "602"; etc.); video that'd allow me proper due process, prove exculpatory, + require CTF/CDCR expunge "115."  While this isn't platform to properly argue such, CTF/CDCR's motive for such egregious behavior is clear (to us inmates), classic deliberate indifference, + in violation

of, for example, my 8th and 14th Amendment rights.

Dkt. No. 1 at 45-48 (emphasis in original).  Plaintiff requested the complete expungement of the RVR from his record; that the exculpatory video evidence be released to him; and that he be granted a new RVR hearing that allowed him some semblance of equitable due process.  *Id.*  As of the date the complaint was filed, Plaintiff had not received a response to this grievance.  Dkt. No. 1 at 14.  This grievance does not mention defendants Deverick and Lee.  Nor does this grievance reference Grievance No. CTF-19-02959.

## II.  Discussion

Now pending before the Court are the following motions: Defendants' motion for summary judgment, Dkt. No. 32; Plaintiff's motion to appoint counsel, Dkt. Nos. 44, 47; and Defendants' motion for sanctions, Dkt. No. 46.

### A.  Plaintiff's Renewed Request for Appointment of Counsel

Plaintiff has again requested appointment of counsel.  Dkt. Nos. 44, 47.  He argues that counsel is necessary because he has presented genuine issues; material facts are disputed; the matters are complicated and require extensive research, factual investigation, and proficiency in the law; his emotional and neuropsychological faculties are seriously and chronically impaired; he is indigent; and recent proposed amendments to the regulations governing the CDCR increase the complexity and importance of this action.  Dkt. Nos. 44, 47.

"Generally, a person has no right to counsel in civil actions."  *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).  "However, a court may under 'exceptional circumstances' appoint counsel for indigent civil litigants pursuant to 28 U.S.C. § 1915(e)(1)."  *Id.* (citing *Agyeman v. Corrs. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004).  A finding of "exceptional circumstances" requires an evaluation of the likelihood of the plaintiff's success on the merits and of the plaintiff's ability to articulate his claims *pro se* in light of the complexity of the legal issues involved.  *See Agyeman*, 390 F.3d at 1103.  Both factors must be viewed together before reaching a decision on a request for counsel under § 1915.  *See id.*

Plaintiff has previously requested appointment of counsel, Dkt. Nos. 17, 24, and the Court denied these requests for failure to identify exceptional circumstances, Dkt. Nos. 21, 27.  Plaintiff

still has not demonstrated exceptional circumstances requiring appointment of counsel. Plaintiff has ably articulated his claims, despite the asserted impairment of his emotional and neuropsychological faculties, his indigence, and his lack of proficiency in the law. Contrary to Plaintiff's assessment, the legal issues involved are not complex. And Plaintiff's repeated and sustained refusals to engage in discovery in good faith make it difficult to assess the likelihood of his success on the merits. The disputed issues which he has identified do not go to the merits of his claims, and he does not apply the correct governing law. In addition, these issues do not require the assistance of counsel to research or investigate. Plaintiff could have posed his questions in discovery requests, but since commencing the action in October 2020, Plaintiff has not served Defendants with any discovery. Finally, the proposed amendments to the California Code of Regulations are not relevant to whether he was provided with the constitutionally guaranteed due process protections. Plaintiff's request for appointment of counsel is DENIED for lack of exceptional circumstances. Dkt. No. 44.

**B.     Defendants' Motion for Summary Judgment**

On October 22, 2021, Defendants filed the summary judgment motion that is now pending before the Court. Dkt. No. 32. Defendants argue that they are entitled to summary judgment because Plaintiff did not exhaust his due process claims against defendants Deverick and Lee; because Plaintiff has not alleged deprivation of a protected liberty interest; because Plaintiff received all constitutionally required due process protections; because Plaintiff cannot state a due process claim against defendants Deverick and Lee for their involvement in reviewing his grievance; because Plaintiff cannot be awarded the injunctive relief he seeks; and because Defendants are entitled to qualified immunity. Dkt. No. 32.

Plaintiff has not filed an opposition to the summary judgment motion despite being granted two extensions of time to May 12, 2022. Dkt. Nos. 39, 43. Instead, Plaintiff has filed the following pleadings: (1) the request for appointment of counsel discussed *supra*, Dkt. No. 44; (2) a pleading titled "Plaintiff's Motion for Appointment of Counsel + Partial Response to Defendants' Recent Requests," Dkt. No. 44; and (3) an addendum to his request for counsel, Dkt. No. 47. In these pleadings, Plaintiff poses questions about the validity of prison policies, correctional officer

1    training, and how prison disciplinary proceedings are conducted.  He does not explain in these

2    pleadings how he has stated a due process claim or exhausted his due process claim.

3         Having carefully considered the record and the relevant governing caselaw, the Court finds

4    that Defendants are entitled to summary judgment because Plaintiff has not alleged deprivation of

5    a protected liberty interest.  In addition, the Court finds that Plaintiff received all constitutionally

6    required due process protections; Plaintiff did not exhaust his due process claims against

7    defendants Deverick and Lee; and Plaintiff cannot state a due process claim against defendants

8    Deverick and Lee for their involvement in reviewing his grievance.  Dkt. No. 32.  The Court

9    declines to address the remaining arguments raised by Defendants.

### 1.      Legal Standard

11        Summary judgment is proper where the pleadings, discovery and affidavits show there is

12   "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

13   law."  *See* Fed. R. Civ. P. 56(a) (2014).  Material facts are those that may affect the outcome of the

14   case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material

15   fact is genuine if the evidence is such that a reasonable jury could return a verdict for the

16   nonmoving party.  *See id.*

17        A court shall grant summary judgment "against a party who fails to make a showing

18   sufficient to establish the existence of an element essential to that party's case, and on which that

19   party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an

20   essential element of the nonmoving party's case necessarily renders all other facts immaterial."

21   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  The moving party bears the initial

22   burden of identifying those portions of the record that demonstrate the absence of a genuine issue

23   of material fact.  *Id.*  The burden then shifts to the nonmoving party to "go beyond the pleadings

24   and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on

25   file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *See id.* at 324

26   (citing Fed. R. Civ. P. 56(e)).

27        For purposes of summary judgment, the court must view the evidence in the light most

28   favorable to the nonmoving party; if the evidence produced by the moving party conflicts with

United States District Court
Northern District of California

1    evidence produced by the nonmoving party, the court must assume the truth of the evidence

2    submitted by the nonmoving party.  *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999).

3    The court's function on a summary judgment motion is not to make credibility determinations or

4    weigh conflicting evidence with respect to a disputed material fact.  *See T.W. Elec. Serv., Inc., v.*

5    *Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

6                        **2.        Liberty Interest**

7            Defendants argue that Plaintiff has failed to allege a due process violation because the

8    disciplinary finding and related sanction did not impose an atypical and significant hardship or

9    affect the duration of his sentence.  The Court agrees.

10           The Due Process Clause of the Fourteenth Amendment protects individuals against

11   governmental deprivations of "life, liberty or property" without due process of law.  *Board of*

12   *Regents v. Roth*, 408 U.S. 564, 570-71 (1972); *Mullins v. Oregon*, 57 F.3d 789, 795 (9th Cir.

13   1995).  Interests that are procedurally protected by the Due Process Clause may arise from two

14   sources – the Due Process Clause itself and state laws.  *See Meachum v. Fano*, 427 U.S. 215, 223-

15   27 (1976).  In the prison context, these interests generally pertain to liberty.  Changes in conditions

16   so severe as to affect the sentence imposed in an unexpected manner implicate the Due Process

17   Clause itself, whether or not they are authorized by state law.  *See Sandin v. Conner*, 515 U.S.

18   472, 484 (1995).

19           A state may not impose such changes without complying with minimum requirements of

20   procedural due process.  *See id.* at 484.  Deprivations that are authorized by state law and are less

21   severe or more closely related to the expected terms of confinement may also amount to

22   deprivations of a procedurally protected liberty interest, provided that (1) state statutes or

23   regulations narrowly restrict the power of prison officials to impose the deprivation, i.e., give the

24   inmate some right to avoid it, and (2) the liberty interest in question is one of "real substance."

25   *See id.* at 477-87.  Generally, "real substance" will be limited to freedom from (1) a restraint that

26   imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of

27   prison life," *id.* at 484, or (2) state action that "will inevitably affect the duration of [a] sentence,"

28   *id.* at 487.

United States District Court
Northern District of California

10

Whether a restraint is "atypical and significant" under *Sandin* requires a case by case consideration. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). Typically, a court should consider the following factors: "1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence." *Id.* at 861.

A court presented with a procedural due process claim by a prisoner should first ask whether the alleged deprivation is so severe that it implicates the Due Process Clause itself, or instead implicates only an interest created by state statute or regulation. If it implicates neither, no procedural due process claim is stated. If it implicates the Due Process Clause, the court must determine what process is due.

If the deprivation implicates an interest created by state statute or regulation, the court must ask whether the applicable state statute or regulation narrowly restricts the power of prison officials to impose the deprivation. *Bonin v. Calderon*, 77 F.3d 1155, 1161-62 (9th Cir. 1996) (looking first to statutory language and finding no state-created constitutionally protected interest in choosing method of execution because state statute does not guarantee prisoner choice). Next, the court must ask whether the deprivation is one of "real substance," s*ee, e.g., Jones v. Moran*, 900 F. Supp. 1267, 1273-74 (N.D. Cal. 1995) (Wilken, J.) (adopting Justice Breyer's two-prong analysis of *Sandin* majority opinion). Only if the answer to both prongs of this inquiry is yes does the state statutory provision create a liberty interest triggering an entitlement to procedural due process. *See, e.g., Myron v. Terhune*, 476 F.3d 716, 718-19 (9th Cir. 2007) (classification for California Level IV prison rather than Level III prison not shown to be atypical and significant hardship; refusal to allow prisoner to publish and distribute inmate publication not atypical and significant deprivation); *Mitchell v. Dupnik*, 75 F.3d 517, 523 (9th Cir. 1996) (violation of jail regulation that provides for inmates to be present when legal papers are searched not dramatic departure from basic conditions of incarceration, even for pretrial detainees, sufficient to create liberty interest); *Mujahid v. Meyer*, 59 F.3d 931, 932 (9th Cir. 1995) (despite prior case law, no

United States District Court
Northern District of California

1   liberty interest under *Sandin* when inmate placed in disciplinary segregation for 14 days).  Finally,

2   the court must determine what process is due.

3         Here, Plaintiff was initially sanctioned with 90 days of credit loss and placement on C-

4   status for 30 days, ECF No. 1 at 19, 28-29, but the 90 days were restored to him, Galvan Decl., ¶¶

5   8-9 and Exs. D and E.  There is no due process violation when good-time credits are restored

6   because there is no significant hardship on the inmate and no impact on the duration of the

7   inmate's sentence.  *See Aguilar v. Ohland*, No. C 14-0949 MEJ (PR), 2015 WL 1967263, at *3

8   (N.D. Cal. May 1, 2015) (citing cases).  Nor is there a due process violation where an inmate loses

9   privileges as a result of being downgraded to C-status.  *See Sandin*, 515 U.S. at 485-86 (inmate's

10  30-day loss of privileges associated with placement in disciplinary segregation did not result in

11  type of atypical, significant deprivation to which due process protections apply); *Armenta v.*

12  *Paramo*, C No. 316-CV-02931 BTM-KSC, 2018 WL 4612662, at *8 (S.D. Cal. Sept. 25, 2018)

13  (placement on C status does not constitute atypical and significant hardship under *Sandin*) (citing

14  cases); *Arroyo v. Grounds*, No. C 10-01007 SBA, 2011 WL 4726465, at *3 (N.D. Cal. Sept. 30,

15  2011) (placement on C-status for three months does not implicate protected liberty interest); *Baker*

16  *v. Lugo*, No. 2:16-cv-3671-PA, 2017 WL 1428734, *3-4 (C.D. Cal. 2017) (finding that "as a

17  matter of law, the remaining disciplinary measures—loss of possibility of a favorable prison

18  transfer, loss of access to yard privileges, dayroom privileges, telephone privileges, and vendor

19  package privileges for 90 days—do not impinge on a liberty interest created by the Due Process

20  Clause").

21        In his pleadings filed after Defendants filed their summary judgment motion, Plaintiff has

22  posed general questions as to whether an RVR may be accessed by the state or federal judicial

23  system or by the community at large, and he argues that an RVR may negatively impact an

24  inmate's employment, housing, insurance, personal and professional finances, childcare,

25  healthcare, and international travel.  To the extent that Plaintiff intends these questions to

26  challenge the summary judgment motion, the Court finds that these concerns do not establish that

27  Plaintiff's due process rights were violated.  These concerns do not implicate a liberty interest

28  within the meaning of the Due Process Clause because any impact on these areas of life is not an

United States District Court
Northern District of California

"atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," nor do such impacts have any effect on the duration of an inmate's sentence. *See Sandin*, 515 U.S. at 484. An RVR could potentially reduce Plaintiff's chance of being found suitable for parole. But Plaintiff has not made that argument, and nothing in the record supports it. The record is silent as to factors that would indicate whether expungement of Plaintiff's RVR would accelerate his eligibility for parole, such as whether this RVR is the only one in Plaintiff's record, whether Plaintiff has received a parole suitability hearing, and whether Plaintiff has previously been denied a parole date, and if so reasons for the denial. *See Sandin*, 515 U.S. 472, 487 (1995) ("The chance that a finding of misconduct will alter the balance [or a parole suitability decision] is simply too attenuated to invoke the procedural guarantees of the Due Process Clause"); *Ramirez v. Galaza*, 334 F.3d 850, 859 (2003) (successful challenge to prison disciplinary proceeding will not necessarily shorten length of confinement because parole board could deny parole for other reasons).

There is no triable issue of fact as to whether the RVR implicates a liberty interest triggering the protections of the Due Process Clause. The Court GRANTS summary judgment in favor of Defendants because neither the issuance of the RVR nor the sanctions implicated the Due Process Clause. In addition, as discussed below, Plaintiff received all constitutionally required procedural due process protections; Plaintiff has failed to state a claim against defendants Deverick and Lee; and Plaintiff has failed to exhaust his claims against defendants Deverick and Lee. The Court declines to address the remaining arguments raised by Defendants in their summary judgment motion.

### 3.     Due Process Protection

In the alternative, even if the issuance of the RVR implicated the Due Process Clause, Plaintiff received all constitutionally required due process protections. The only procedural protections required in a prison disciplinary proceeding are written notice, time to prepare for the hearing, a written statement of decision, allowance of witnesses and documentary evidence when not unduly hazardous, aid to the accused where the inmate is illiterate or the issues are complex, some evidence to support the decision, and some indicia of reliability as to the information forming

13

the basis for prison disciplinary actions if that information is received from a confidential informant.[2]  *See Wolff v. McDonnell*, 418 U.S. 539, 564-67 (1974); *Superintendent v. Hill*, 472 U.S. 445, 454 (1985); *Cato v. Rushen*, 824 F.2d 703, 704-05 (9th Cir. 1987).  The Due Process Clause only requires that prisoners be afforded those procedures mandated by *Wolff* and its progeny: it does not require that a prison comply with its own, more generous procedures.  *See Walker v. Sumner*, 14 F.3d 1415, 1419–20 (9th Cir. 1994), *overruled on other grounds by Sandin*, 515 U.S. 472.

The record shows, and Plaintiff has acknowledged, that Plaintiff was provided all the relevant procedural protections identified above.  Plaintiff was provided with written notice of the charges prior to the hearing, time to prepare for the hearing, and a written statement of decision.  While Plaintiff asked for inmate-witnesses, he did not identify any inmate-witnesses by name.  There is no requirement, whether under the Constitution or state regulations, that prison officials investigate rules violations and identify and present witnesses at hearings.  Prison officials' decision not to identify inmate-witnesses for Plaintiff does not constitute a denial of Plaintiff's right to call witnesses.  Finally, there was evidence to support the charge of fighting.  Officer Villasenor reported seeing the fight and Plaintiff acknowledged fighting to defend himself.  Prison regulations do not make a distinction between initiating a fight or defending oneself in a fight.  *See generally* 15 Cal. Code Regs. 3005(d)(1).

### 4.        Claims Against Defendants Deverick and Lee

In addition, Defendants are correct that Plaintiff has both failed to state a claim against defendants Deverick and Lee and failed to exhaust his claims against these defendants.

Deverick and Lee's only participation in the alleged deprivation of Plaintiff's due process

---

[2]  Plaintiff cites to *Sira v. Morton*, 380 F.3d 57 (2d Cir. 2004), for the proposition that "due process does not permit a hearing officer simply to ratify the bad conclusions of others but requires some inquiry to determine whether the totality of facts and circumstances reasonably supports the proffered conclusion."  Dkt. No. 44 at 4.  *First*, though this Court may look to the reasoning of other circuits and district courts for guidance, this Court is bound only by published decisions in this circuit.  *See Gunther v. Washington Cnty.*, 623 F.2d 1303, 1319 (9th Cir. 1979).  In addition, *Sira* is not relevant here because that case addresses how to assess information received from a confidential informant, which is not the issue in this case.  *Sira*, 380 F.3d at 77 (prison officials should conduct independent assessment of evidence underlying misconduct charge when evidence is obtained from confidential informant).

United States District Court
Northern District of California

rights was their review and denials of Grievance No. CTF-19-02959.  A prison official's denial of an inmate's grievance generally does not constitute significant participation in an alleged constitutional violation sufficient to give rise to personal liability under Section 1983.  *See, e.g., Wilson v. Woodford*, No. 1:05–cv–00560–OWW–SMS, 2009 WL 839921, at *6 (E.D. Cal. Mar. 30, 2009) (ruling against prisoner on administrative complaint does not cause or contribute to constitutional violation); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (prisoner has no constitutional right to effective grievance or appeal procedure); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."). In addition, as discussed above, the issuance of the RVR did not implicate the Due Process Clause. Deverick and Lee's decision not to expunge the RVR in the course of reviewing Grievance No. CTF-19-02959 therefore did not violate Plaintiff's due process rights.

Plaintiff has also failed to exhaust his claims against Deverick and Lee as required by the Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA"). The PLRA amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Exhaustion is mandatory and no longer left to the discretion of the district court.  *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).  Proper exhaustion requires using all steps of an administrative process and complying with "deadlines and other critical procedural rules."  *Woodford*, 548 U.S. at 90.  The level of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures.  *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) ("To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations.").  The defendant's burden is to prove that there was an available administrative remedy and that the prisoner did not exhaust that available administrative remedy.  *Albino v. Baca*, 747 F.3d 1162, 1172, 1176 (9th Cir. 2014) (en banc) (reversing district court's grant of summary judgment to defendants on exhaustion issue because defendants did not carry their initial burden of proving that there was an available administrative remedy that prisoner-plaintiff failed to

United States District Court
Northern District of California

exhaust).  Once the defendant has carried that burden, the prisoner has the burden of production.  *Albino*, 747 F.3d at 1172.  That is, the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.  *Id.*

Here, the claims against defendants Deverick and Lee arise out of their review and denials of Grievance No. CTF-19-02959.  The only grievance filed after Grievance No. CTF-19-02959 was Log No. 021289.  Log No. 021289 alleged that CTF was "withholding exculpatory video evidence of assault," did not reference Grievance No. CTF-19-02959 or Deverick and Lee, and was not exhausted (had not received a final decision) by the time this action was filed.  Log No. 021289 did not raise, much less exhaust, Plaintiff's claim against defendants Deverick and Lee.

## CONCLUSION

The Court DENIES Plaintiff's motion for appointment of counsel, Dkt. No. 44; and GRANTS Defendants' motion for summary judgment, Dkt. No. 32.  The Court therefore DENIES as moot Defendants' motion for sanctions.[3]  Dkt. No. 46.  The Clerk shall terminate all pending motions as moot, enter judgment in favor of Defendants and against Plaintiff, and close this case.

This order terminates Dkt. Nos. 32, 44, 46.

**IT IS SO ORDERED.**

Dated: 7/11/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[3] In the motion for sanctions, Defendants contend that Plaintiff failed to comply with the Court's orders directing him to respond to discovery and requested the following sanctions: an order terminating this action or an order deeming admitted Defendants' RFAs and granting evidentiary sanctions prohibiting Plaintiff from offering at trial, or in any motion, any evidence not disclosed in response to Defendants' RFPs and interrogatories.  Dkt. No. 46.  Plaintiff has not offered any evidence in the pleadings filed after Defendants' summary judgment motion and has not opposed the summary judgment motion.  The Court has granted summary judgment in favor of Defendants.  Accordingly, the motion for sanctions is moot.